MATILDA HEILBACK, as Assignee of MARCUS HEILBACK, Respondent, v. CONSUMERS' BREWERY OF BUFFALO, Appellant.

Negligence — assumption of risk — when employee injured by fall of steam pipe must be held to have assumed risk with full knowledge of the conditions.

1. At common law one who voluntarily enters into or continues in service without objection or complaint, having knowledge or the means of knowing the danger involved, is deemed to have assumed the risk.

2. A foreman in charge of the weighing of hay was injured by the fall of a steam pipe which was dislodged from its fastening along the end of the roof which covered the scales. The ordinary loads of hay were weighed upon this scale and cleared the roof and steam pipe without trouble. A load of hay of unusual height and size was, upon the day of the accident, driven upon the scales, and in backing this load out the steam pipe was dislodged and fell upon the foreman who was directing the work and guiding the load from the rear. On examination of the facts, *held*, that the evidence indicates that the accident was not caused by any defect in the pipe or in its fastening; nor does the evidence disclose anything as to the

location of the pipe or the character of its fastening that would put an employer of ordinary care upon notice; hence he cannot be charged with negligence. That the plaintiff knew more about the existing conditions than any one else, and his failure to bring his knowledge of any dangerous condition, if one existed, to the attention of his employer absolves the latter from liability.

*Heilback* v. *Consumers' Brewery*, 140 App. Div. 941, reversed.

(Argued December 13, 1912; decided December 31, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 2, 1910, affirming, by a divided court, a judgment in favor of plaintiff entered upon a verdict.

On the 16th day of March, 1907, the husband of the plaintiff, then being an employee in the defendant's brewery in the city of Buffalo, received injuries of a very serious nature. He brought this action upon a complaint alleging causes of action both at common law and under the Employers' Liability Act. Upon the trial he abandoned his claim under the Employers' Liability Act, and elected to stand upon his cause of action at common law. Twice the case was tried without result, owing to disagreements of juries. Upon the third trial the plaintiff recovered a verdict, and the judgment entered was affirmed by a divided Appellate Division. From that judgment of affirmance the defendant has appealed to this court. After the recovery of the verdict and the entry of judgment the plaintiff assigned the same to his wife, who was thereupon substituted in his place, and later the plaintiff died. For brevity and convenience we shall refer to the decedent as the plaintiff.

The charge of negligence alleged in the complaint is that the defendant carelessly and improperly maintained a steam pipe in such an unsafe and dangerous position on one of its buildings that it fell upon the plaintiff while he was engaged in his proper employment, and without any fault on his part inflicted the injuries which he sustained. The answer of the defendant was, in substance, a general denial.

1912.]                Statement of case.             [207 N. Y.]

The facts bearing upon the issue are, briefly, as follows: For three years the plaintiff had been employed by the defendant as " barn boss." His duty was to care for the horses used by the defendant in its business; to clean the stables, and to receive and store hay and other fodder as often as necessary. In the discharge of this duty he took in on an average two loads of hay per week, which was weighed on a platform scales on the premises. The scales were housed in a structure which served as a sort of connecting link between the office of the brewery on the south and the Rochevot residence on the north; the roof of the scale house being supported by iron girders and wooden cross beams, which were about eleven feet above the ground. Along the face of the westerly wooden beam of the scale ·house there was a six-inch steam pipe covered with asbestos, which originally conveyed steam for heating purposes from the brewery to the Rochevot residence. In 1905 this pipe was disconnected at the southerly end of the scale house, and the end thereof closed with a cap. It was left suspended along the face of the wooden beam over the entrance to the scale house, and was supported in that position by an iron bracket, which sagged about two inches below the bottom of the wooden beam to which it was attached. The plaintiff testified that before the day of the accident this pipe had been dislodged from its supporting bracket by a load of bar fixtures that had been driven through the scale house; and that Schultz, the defendant's assistant engineer, at once replaced it upon the bracket, fastening it with wire, and assured the plaintiff that it was then safe. There was no evidence that its position or condition was ever changed after that until the day of the accident. On the morning of that day a man came to the brewery with a load of hay which had been ordered by the manager. It was driven upon the scales and proved to be an unusually large load, the largest that had ever been received. The plaintiff ordered it to be taken around to Earl place, in

the rear of the defendant's plant, to be unloaded into
the barn. It transpired that the team was too light to
back the wagon out of the scale house into the yard. The
team was, therefore, unhitched and attached to the rear
of the wagon for the purpose of thus pulling the wagon
backward out of the scale house. The driver requested
the plaintiff to take the wagon pole for the purpose of
steering. While the plaintiff was astride of the pole,
thus guiding the wagon, the load passed under the beam
which supported the pipe, and as the load cleared the beam
the pipe fell upon the plaintiff, inflicting the injuries to
which reference has been made.

*Carlton E. Ladd* for appellant. The defendant could
not reasonably be expected to foresee the happening of
the peculiar accident to the plaintiff. The motion for non-
suit should have been granted. (*Dobbins* v. *Brown*, 119
N. Y. 188; *Harley* v. *Buffalo C. M. Co.*, 142 N. Y. 31;
*Del Sejnore* v. *Hallinan*, 153 N. Y. 274; *McGrell* v. *Buf-
falo Office Bldg.*, 153 N. Y. 265; *Glens Falls P. C. Co.*
v. *Travellers Ins. Co.*, 162 N. Y. 399; *Laflin* v. *Rail-
road Co.*, 106 N. Y. 136; *Stringham* v. *Hilton*, 111 N. Y.
188; *Dwyer* v. *Hills Bros.*, 79 App. Div. 45; *Heffernan*
v. *Arnold*, 48 App. Div. 419; *Stafford* v. *Canavan Bros.
Co.*, 135 App. Div. 889.) As the condition of the pipe
and brace was known better to the plaintiff than to the
master, the plaintiff assumed the risk, and on such
ground also a nonsuit should have been ordered. (*Dillon*
v. *Nat. C. T. Co.*, 181 N. Y. 215; *Rooney* v. *Brogan
Const. Co.*, 194 N. Y. 32; *Bushtis* v. *C. C. Co.*, 128 App.
Div. 780; 198 N. Y. 548; *Kaare* v. *Troy Steel & Iron
Co.*, 139 N. Y. 369; *Hickey* v. *Taafe*, 105 N. Y. 26;
*Dixon* v. *N. Y., O. & W. R. Co.*, 198 N. Y. 58; *Jack-
son* v. *Greene*, 201 N. Y. 76; *Drake* v. *Auburn City
R. R. Co.*, 173 N. Y. 466; *Hall* v. *Wakefield & Stone-
ham*, 178 Mass. 98.) The plaintiff was guilty of con-
tributory negligence in failing to advise his master of a

1912.]  Opinion, per WERNER, J.  [207 N. Y.]

condition which he knew to be dangerous. (S. & R. on Neg. [5th ed.] § 22; *McMillan* v. *Saratoga R. R. Co.*, 20 Barb. 449; *Rockstrow* v. *Astoria Marble Co.*, 121 App. Div. 501.)

*Paul J. Batt* and *V. H. Riordan* for respondent. The trial court properly submitted to the jury the question of the defendant's negligence. (*Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Embler* v. *Town of Wallkill*, 57 Hun, 384; 132 N. Y. 222; *Braun* v. *B. G. El. Co.*, 200 N. Y. 484; *Gubasko* v. *Mayor, etc.*, 12 Daly, 183; *Hume* v. *Mayor*, 74 N. Y. 264; *McGovern* v. *Standard Oil Co.*, 11 App. Div. 588; *Central Trust Co. of New York* v. *East Tennessee V. & G. Ry. Co.*, 73 Fed. Rep. 661; *Olmslaer* v. *Philadelphia Co.*, 31 Fed. Rep. 354; *L. & N. R. Co.* v. *Tucker*, 65 S. W. Rep. 453; *A. T. & F. R. R. Co.* v. *Rowan*, 55 Kan. 270; *Byrne* v. *Brooklyn City Ry. Co.*, 6 Misc. Rep. 441; *McCauley* v. *Norcross*, 155 Mass. 584.) The court properly submitted to the jury the questions of assumption of risk and contributory negligence. (*McGovern* v. *R. R. Co.*, 123 N. Y. 288; *Corcoran* v. *Holbrook*, 59 N. Y. 520; *Flike* v. *R. R. Co.*, 53 N. Y. 553; *Larkin* v. *W. M. Co.*, 45 App. Div. 6; *Benzing* v. *Steinway & Sons Co.*, 101 N. Y. 547; *Daly* v. *Schaaf*, 28 Hun, 314; *Drake* v. *R. R. Co.*, 173 N. Y. 473.)

WERNER, J. This case very forcibly illustrates the vicissitudes of this class of litigation. Although the plaintiff's injuries were most serious and distressing, two juries disagreed as to his right to recover. A third jury gave him a verdict which was sustained at the Appellate Division by a bare majority of the justices. The case is now before us on defendant's further appeal and we feel constrained to agree with the two dissenters in holding that the plaintiff has failed, as matter of law, to establish a cause of action.

1. We think the plaintiff failed to establish negligence

on the part of the defendant. The evidence plainly indicates that the accident was caused, not by any defect in the pipe or in its fastening, but by being torn from its place by a load of hay of unusual weight and height. This load of hay had been ordered in the usual way, without any knowledge on the part of the defendant's manager as to its weight or size. For years before the accident, hay had been ordered and received in the same manner, always being weighed on these scales without any difficulty. An average of two loads a week were thus received, weighed and unloaded, and always under the supervision and with the assistance of the plaintiff, for that was part of his regular work. Not once had the plaintiff ever suggested to his superiors that this pipe created any difficulty or danger in the weighing of hay; nor does the evidence disclose anything as to the location of the pipe or the character of its fastenings that would put an employer of ordinary care upon notice. The situation was one, moreover, which called upon the plaintiff to notify the defendant if it developed elements of danger, because if it was apparent to any one it must have been so to the plaintiff whose work constantly brought him in contact with it. A simple illustration will disclose the reason of this rule. If one of the defendant's horses had developed vicious habits in the stable, no one would have known it better than the plaintiff, whose duty it was to care for them. Manifestly the defendant's officers could only obtain information of such a condition from the employee who was familiar with it. The actual occurrence is not different in principle. If there was anything about the location or the condition of the pipe which rendered it dangerous for those who had to do with the weighing of hay, the plaintiff knew more about it than anyone else, and his failure to bring his knowledge to the attention of his employer absolves the latter from liability. There had been a previous occasion, it is true, when the pipe had been torn from its fastening by a long mir-

ror which was part of a load of bar fixtures that had been drawn through the scale house. That was an exceptional occurrence, however, which has no direct bearing upon the circumstances in which the plaintiff was injured, for there is nothing in the record to indicate the height of the mirror or its location on the load of which it formed a part. In that connection it is to be remembered that the pipe did not then fall, but was simply moved out of the bracket or arm upon which it rested, and it was at once put back into place by the defendant's assistant engineer and fastened with wire. This employee assured the plaintiff that it was then safe, and there is nothing in the record to indicate that it was not so. Nor is there any evidence which even tends to show that on the day of the accident the fastening was not as good as it was when made.

2. If the situation was one from which a reasonably prudent man should have apprehended danger, the plaintiff was guilty of contributory negligence as matter of law. Since this is a case under the common law, this question must be dealt with under common-law rules. For three years it had been a part of the plaintiff's regular work to attend to the weighing and unloading of hay which, as already stated, averaged two loads a week. These loads differed in size and weight, but never before this accident had there been any trouble. This particular load was so much larger than the usual one that it must have been obvious to the plaintiff. There is testimony to the effect that it was the largest load ever received, and the sequel proves that it was so large and heavy that the team could not back it out of the scale house. Instead of doing the obviously safe thing by taking off a part of the load, the plaintiff and the driver decided to attach the team to the rear end of the wagon and thus pull it backwards out of the scale house. As a part of this arrangement the plaintiff bestrode the pole for the purpose of steering, and this was the position he was in

when the pipe fell upon him. It is plain to a demonstration that the hay must have dislodged the pipe, and that the pipe could not have fallen upon the plaintiff until the load had passed from under it. This was a situation, not only unusual and unforeseen, but one created wholly by the plaintiff and the driver, without the knowledge of the defendant or its officers. Unfortunately for the plaintiff, this imposes upon him a choice of alternatives either of which is fatal to his suit. If the conditions were not such as to suggest the probability of danger to a person of reasonable prudence, the defendant cannot be charged with negligence; and if the contrary is true, then the plaintiff was plainly guilty of contributory negligence, for he knew more about it than anyone else.

One of the grounds upon which the dissenting judges in the Appellate Division placed their votes, was that the plaintiff had assumed the risk of the conditions which resulted in the accident to him. We shall not discuss that question at length. The same evidence which serves to establish the plaintiff's contributory negligence also shows that any risk which may have existed was assumed by the plaintiff, for he not only knew of it, but failed to advise his employer of it. And lest this point may not have been stated with entire clearness, it may be well to repeat that the pipe itself was not in a dangerous position, nor was it improperly fastened. The only danger was one which might arise from the kind of loads that were taken in or out of the scale house. Hay seems to have been the only product that was usually loaded in such a manner as to reach anywhere near the pipe. There was, of course, the single load of barroom furniture to which reference has been made; but if any previous load of any character was of such height as to suggest danger, that was as apparent to the plaintiff as anyone else. Especially true is this of the hay, for he could not have worked there three years without knowing whether there was danger in drawing such loads under this pipe, and if

this practice was attended with risk he assumed it so long as he did not bring it to the attention of the defendant. At common law, one who voluntarily enters into or continues in service without objection or complaint, having knowledge or the means of knowing the danger involved, is deemed to have assumed the risk. (*Dillon* v. *Natl. Coal Tar Co.*, 181 N. Y. 215.)

The cases cited by counsel for the plaintiff do not help him. There is a well-defined and logical distinction between an employee who is perfectly familiar with a dangerous situation which he may have helped to create, and a wayfarer upon a public highway who is injured by defects or obstructions of which he has no knowledge. The cases relied upon to sustain this judgment belong to the latter class. (*Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Embler* v. *Town of Wallkill*, 57 Hun, 384; affd., 132 N. Y. 222; *Gubasko* v. *Mayor, etc.*, 12 Daly, 183, and others.)

The judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.