EMMA GARDNER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31776.)

MARVIN GARDNER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31777.)

Court of Claims, May 27, 1954.

*William E. J. Connor* and *Burns F. Barford* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J. On the 3d day of November, 1951, at about 4:00 P.M. of that day, claimant, Emma Gardner, wife of the claimant, Marvin Gardner, was driving the latter's 1948 Chevrolet sedan automobile in a general northerly direction on Route 9, a three-lane New York State Highway, and more particularly on that part thereof running through the village of Kinderhook, New York. She had worked that day as usual in a restaurant in the city of Hudson, New York, and was returning to her home in the village of Valatie, New York. When in front of the property of one, William H. Mitchell, the automobile which she was thus driving was seen to swerve suddenly to the left or west going into the path of an automobile then and there being driven southerly on the westernmost lane of said highway and causing said southbound automobile to run into and against the automobile which she was driving.

It also has been established that immediately prior to the afore-mentioned accident there had been a flash snowstorm, the first of the season, which had covered the ground and limbs of trees with snow in the vicinity of the place of the accident; that the weather was mild, and that it had been raining when claimant, Emma Gardner, left the city of Hudson, New York, a short time before the accident; that at or near the place of the accident there was standing an elm tree located partly on the border of the State's highway right of way and partly on the north line of a driveway on the Mitchell property, the branches and limbs of which overhung the State highway and particularly the easternmost lane thereof; that said tree was diseased to the actual knowledge of the State of New York, its agents and employees, said employees having been notified thereof by Mrs. Mitchell, wife of William H. Mitchell aforesaid, and they having inspected the same on July 27, 1951, and again on October 27, 1951, on which latter occasion said employees put a tag or plaque on said tree marking it as diseased; that in fact the particular diseased condition of the tree could be determined from the ground by the appearance of the bark; that said tree was under the dominion and care of the State of New York, and that the State of New York admits its responsibility for it; that at some short time prior to the time that claimant, Emma Gardner, arrived at the point on said highway on which was located the aforesaid tree, a limb thereof about ten to fifteen feet in length and about five inches in diameter at its thickest part had fallen from it from a height of twenty-five feet to the pavement of the highway obstructing the entire easternmost lane of the pavement and completely blocking the passage of motorists making use thereof; that at the time of the accident there were about two inches of greyish colored slush upon the pavement of the highway at and near the point of the accident and upon and around said limb as it lay on the pavement; and that claimant, Emma Gardner, had been driving about forty miles per hour prior to the flash snowstorm; that as it began to snow, she slowed down the speed of the automobile to about twenty-five miles an hour; and that she continued driving at that speed up to the time of the accident.

A dangerous condition was created by the State-condemned tree standing in close proximity to the traveled portion of the highway with limbs and branches overhanging the pavement of the same, and such dangerous condition was or should have been known to the State of New York, its officers and employees. Furthermore, such condition had existed for a period of time

sufficient for the State of New York, in the exercise of reasonable care, to have acted to remedy it. The failure on the part of the State of New York to do so was negligence on its part, which negligence we hold was the sole proximate cause of the accident described herein with its resultant damages.

The State of New York is obligated to maintain its highways in a reasonably safe condition for travel, not only with regard to obstructions and defects in the traveled portion of the road, but also with regard to conditions adjacent to and above the highway which might reasonably be anticipated to result in injury and damage to the users thereof. (*Shaknis* v. *State of New York,* 251 App. Div. 767, affd. *sub nom. Doulin* v. *State of New York,* 277 N. Y. 558.) And the fact that the tree was located partly on State property and partly on private property is of no consequence, particularly where the limbs and the branches thereof overhung the traveled portion of the highway. (*Messinger* v. *State of New York,* 183 Misc. 811; *Embler* v. *Town of Wallkill,* 57 Hun 384, affd. 132 N. Y. 222.)

We do not know from the evidence exactly when the limb fell before the accident, for by reason of the injuries sustained by the claimant, Emma Gardner, she was unable to remember anything which happened from the time that she left Stuyvesant Falls, located about one and one-half to two miles south of the point of the accident, up to the time that she arrived at the place of the accident, and no witness was produced upon the trial to fix the time of that occurrence. There is evidence, however, that it had not been on the pavement long before the accident occurred. For the reasons hereinbefore stated, the time of its falling is not important on the question of notice to the State of New York of its diseased condition. At any rate, whether it had fallen immediately before her arrival at the point of the accident or whether it had fallen some appreciable time before her arrival at that point, it was difficult for her in the exercise of reasonable care to perceive and to distinguish it until she was practically upon it.

We may reasonably infer that Emma Gardner, coming upon said branch or limb located as aforesaid upon the said pavement and because of the circumstances described herein, was unable in the exercise of reasonable care to see it in time to stop the automobile she was driving before reaching it; that as a result of coming upon it so suddenly there was created an emergency, not of her own making, and that in such emergency she avoided or attempted to avoid said branch or limb by turning the automobile to the left or to the west as a result of which it was

brought into the path of the oncoming southbound automobile causing that car to run into the automobile she was driving. Perhaps claimant, Emma Gardner, startled by the suddenness of the appearance of the branch or limb when she was close enough to observe it, may have been disconcerted by the peril in which she was placed, and, therefore, was unable to manage and to control the automobile that she was driving as she might otherwise have done.

We think that claimant, Emma Gardner, has established facts making applicable " the well-settled doctrine that one placed suddenly by another in a position of peril is not to be deemed guilty of contributory negligence for a failure to exercise the best judgment in the emergency (*Buel* v. *N. Y. C. R. R. Co.,* 31 N. Y. 314; *Roll* v. *Northern Central Ry. Co.,* 15 Hun 496; 80 N. Y. 647; *Voak* v. *Northern Central Ry. Co.,* 75 id. 320; *Coulter* v. *American Merchants' Un. Ex. Co.,* 56 id. 585; *Twomley* v. *C. P., N. & E. R. R. R. Co.,* 69 id. 158)." (*Heath* v. *Glens Falls, Sandy Hill & Ft. Edward St. R. R. Co.,* 90 Hun 560, 562.) The law, however, makes allowances for mistakes and for errors of judgment which are likely to happen upon such an emergency. It does not demand the same coolness and self-possession which are required when there is no occasion for alarm or a loss of self-control. (*Lowery* v. *Manhattan Ry. Co.,* 99 N. Y. 158, 161. See, also, *Wardrop* v. *Santi Moving & Express Co.,* 233 N. Y. 227, and *Rague* v. *Staten Is. Coach Co.,* 288 N. Y. 206.)

We conclude that claimant, Emma Gardner, was free from negligence causing or contributing as a proximate cause to the accident herein described with its resultant damages.

The State of New York is in agreement with us as to part of the foregoing for in its brief, page 3, filed April 2, 1954, in connection therewith there is contained the following: " The credible evidence in this lawsuit warrants two factual conclusions: 1. That there was such a tree limb in the road on Route 9 — lying across the entire east lane for northbound traffic — and 2. That the State of New York had notice for many weeks or months prior to November 3rd, of the fact that the tree from which this limb could have fallen, was infected with dutch elm disease — for about 30% of its crown foliage. The sole remaining issue — and let us not minimize the fact that it is a very important and controlling one — is — Should Emma Gardner — as the driver of this car — in broad daylight — with her windshield wipers working properly, as she testified, have seen this BIG — twenty-foot long — FORKED limb lying all across the lane that she was driving in — and have had her car

under control and brought it to a stop. We believe that she should — and for her failure so to do — she is chargeable with at least some negligence, which contributed to the happening of this accident.'' Thus it would seem that the only issue with reference to the claim of Emma Gardner upon which the State of New York differs with our conclusion with reference thereto as expressed herein is that of the contributory negligence of claimant, Emma Gardner.

We regard the injuries sustained by claimant, Emma Gardner, as serious. They consisted of contusions of the back of the head; a generalized type of injury to the brain and more particularly to the frontal area thereof which was testified to as being permanent; a laceration of the lip about one and seventy-seven hundredths centimeters in length, and permanent in nature; two upper teeth injured; and a retrograde amnesia, that is amnesia as to events prior to the accident. She was taken to the hospital following the accident and by reason thereof, where she remained for twenty-two days during twelve of which she was unconscious. She was confused and irrational following the accident until the 16th day of November, 1951, following which she still had headaches and had some temporary difficulty in walking. Following her hospital stay, she was returned to her home and was confined to her bed for about three weeks after which she was permitted to be up and around the house. She remained thus confined to her home until the Spring of 1952, when she was permitted to go out-of-doors. By the Fall of 1952, she had gradually taken on more and more of her housework, but she has been unable to resume her work at the restaurant; and, in fact, up to the date of the trial she had not gone, as she described it, `` down-town '' alone. She has been unable to and has not driven an automobile since the date of the accident. She has had several so-called `` black outs ''. The first one in December, 1952, was of two hours' duration. There were two others thereafter although of lesser severity and shorter duration. During such `` black outs '' she was conscious, but her eyesight seemed to fail her and she became weak and could not stand up. She was attended by a physician about every six weeks during 1952. There is no motor involvement of the extremities, but since the accident she has had a lack of ability to smell and to taste and a defect of memory, all a result of the injuries sustained by her.

She was employed prior to the accident and had been employed for several years prior thereto, and at the time of the accident she was earning $30 a week. She has not been able to return

to work; and it was not established upon the trial as to just when she would be able to return to work. She has suffered physical pain and mental anguish. Claimant, Marvin Gardner, married her in 1934, and they have five children ranging from two months to eighteen years of age as of the date of the trial. We hold that she is entitled to recover against the State of New York.

The fact that claimant, Marvin Gardner, gave his wife, Emma Gardner, permission to drive his car on the occasion did not make her his agent so that her contributory negligence, if any, would be imputed to him and would bar an action for the recovery of damages sustained to his automobile. (*Gochee* v. *Wagner*, 257 N. Y. 344; *Webber* v. *Graves*, 234 App. Div. 579; *Mills* v. *Gabriel*, 259 App. Div. 60, affd. 284 N. Y. 755; *Buckin* v. *Long Island R. R. Co.*, 286 N. Y. 146.) Claimant, Marvin Gardner, irrespective of negligence on the part of his wife, Emma Gardner, is entitled to recover for the damage to his automobile in the uncontroverted amount of $750. The State of New York is in agreement with us on this point for Point II, page 9, of the State's afore-mentioned brief reads as follows: "The Claimant, Marvin Gardner, is Entitled To Recover For the Automobile."

The remainder of claimant Marvin Gardner's cause of action, however, is necessarily derived from the right of action of his wife, and his right to recovery for the items constituting it depends upon our disposition of the claim of his wife, Emma Gardner. In view of our disposition of Emma Gardner's cause of action, her husband, claimant Marvin Gardner, is also entitled to recover on his derivative cause of action.

Claimant, Marvin Gardner, by reason of the injuries sustained by his wife, Emma Gardner, lost the society and companionship of his wife, was compelled to provide medical, hospital, and nursing care, and to purchase medicines for her, all aggregating the sum of about $500. Of the hospital bill of $263.75, the Associated Hospital Service of Capital District paid the sum of $248, through which organization claimant was insured against such charges to the extent of the payment. Payment by said organization does not inure to the benefit of the State of New York.

The claims herein were filed pursuant to an order made on the 27th day of February, 1953, by Honorable George Sylvester, one of the Judges of this court, and have not been assigned and have not been submitted to any other officer or tribunal for audit or determination.

We have concluded that claimant, Emma Gardner, is entitled to an award in the sum of $12,000 against the State of New York as and for her damages; and we have concluded that claimant, Marvin Gardner, is entitled to an award in the sum of $3,000 against the State of New York as and for his damages herein.

Let separate judgments be entered accordingly.